## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## (OCALA DIVISION)

### CASE NO.: 5:18-cv-00224-JSM-PRL

JUDITH SMITH,

        Plaintiff,

v.

WESTLAKE SERVICES, LLC,

        Defendant.

### AGREED MOTION TO COMPEL ARBITRATION AND STAY ACTION

Defendant, WESTLAKE SERVICES, LLC. ("Westlake"), respectfully requests that this Honorable Court compel the Plaintiff, Judith Smith ("Plaintiff"), to arbitrate her claims and stay this action because the Arbitration provision in the Retail Buyer's Order executed by Plaintiff requires the Plaintiff to arbitrate the claims she alleges in the Complaint.[1]  In support of this motion, Westlake states as follows:

### INTRODUCTION AND STATEMENT OF FACTS

Westlake provides consumer financing for new and used automobile purchases throughout the United States, either directly to the consumer, or through a dealership. Westlake offers competitive financing programs for consumers in all categories of the credit spectrum. Westlake is dedicated to providing affordable financing rates that offer the consumer options to purchase either a new or used automobile.

On or about January 13, 2015, Plaintiff, Judith Smith, received financing for a used 2004 Honda CR-V, purchased from Honda of Ocala.   On the same date, Plaintiff executed a Retail

---

[1] This Motion is directed solely to the issue of arbitration.  Westlake denies Plaintiff's claims.

Buyer's Order ("RBO") which contained an Arbitration Provision (the "Arbitration Provision") and a Retail Installment Sales Contract ("RISC")(collectively "Loan Documents"). The Loan Documents were subsequently assigned to Westlake. The Arbitration Provision delineates the procedure for invoking arbitration and the law governing arbitration. *See* Exhibit "A". The Arbitration Provision applies to:

- [a]ny controversy, claim, suit, demand, counterclaim, cross claim, or third party complaint arising out of, or relating to this Order or the parties' relationship (whether statutory or otherwise and irrespective of whether the Financing Approvals were obtained)…

The United States Supreme Court's decision in *Rent-A-Center, West, Inc. v. Jackson* reiterates the long line of cases from the Supreme Court upholding arbitration agreements. 561 U.S. 63 (2010). Among the core concepts addressed in that case was the requirement that arbitration agreements be "enforce[d] according to their terms."

On May 9, 2018, the Plaintiff filed this action against Westlake and asserted statutory violations of the Telephone Consumer Protection Act, 47 U.S.C. §227, *et seq*., ("TCPA") and Florida Consumer Collection practices Act, Florida Statute §§559.55, *et seq.* ("FCCPA"). The claims arise from allegedly unlawful debt collection practices by Westlake. These claims fall within the scope of the Arbitration Provision. As such, the Plaintiff should be compelled to arbitrate her claims with Westlake.

## LEGAL ARGUMENT AND INCORPORATED MEMORANDUM OF LAW

**I.     The Federal Arbitration Act Governs And Any Dispute Concerning Arbitrability Should be Resolved in Favor of Arbitration**

Congress enacted the Federal Arbitration Act ("FAA") "[t]o overcome judicial resistance to arbitration," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006), and "to place arbitration agreements upon the same footing as other contracts[,] . . . [and to] manifest a liberal

federal policy favoring arbitration agreements." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citations and internal quotation marks omitted).

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq. provides:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "The term 'involving commerce' in the FAA [is] the functional equivalent of the more familiar term 'affecting commerce'-words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabeo*, 539 U.S. 52, 56 (2003). The Arbitration Provision expressly states it is governed by the FAA, and that it involves commerce. Exhibit "A", Arbitration Provision. Further, Westlake finances automobiles throughout the United States. Accordingly, the Arbitration Provision is governed by the FAA.

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25, and "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. – Ala. v. Randolph*, 531 U.S. 79, 91 (2000); *see also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995) ("ambiguities as to the scope of the arbitration clause itself [must] be resolved in favor of arbitration") (internal quotations omitted); *Gilmer*, 500 U.S. at 26 (finding that "the burden is on [the party opposing arbitration] to show that Congress intended to preclude a waiver of a judicial forum" as to the statutory rights at issue); *Conax Fla. Corp. v. Astrium Ltd.*, 499 F. Supp. 2d 1287, 1298 (M.D. Fla. 2007) ("ambiguities are to be construed in

favor of arbitration"). The FAA codifies the liberal federal policy in favor of arbitration, mandating that:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, **shall** be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added). Thus, courts must order arbitration of claims "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986) (citation and internal quotation marks omitted). "In [the] absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id*.

The FAA further provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989); *see also Weyerhaeuser Co. v. W. Seas Shipping Co.*, 743 F.2d 635, 637 (9th Cir. 1984) (recognizing that if the parties have agreed to arbitrate, the court is required to order the parties to proceed to arbitration in accordance with the terms of the arbitration agreement).

Normally, in deciding whether to compel arbitration, the court is charged with determining two "gateway" issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84

(2002). However, there is an exception to this general rule when "the parties clearly and unmistakably provide otherwise." *AT&T Tech. v. Communication Workers*, 475 U.S. 643, 649 (1986); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("The question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter"). In such cases, the court examines the underlying contract to determine whether the parties have agreed to commit the question of arbitrability to the arbitrator. *Rent-A-Center, West, Inc.*, 561 U.S. at 70 ("An agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.").

## II.     The Arbitration Provision is Valid and Enforceable and Covers the Plaintiff's Claims.

As discussed above, because all issues of enforceability and arbitrability are committed to arbitration, it would not be appropriate for the Court to rule on any challenges to the validity of the Arbitration Provision. *See Rent-A-Center West, Inc.*, 130 S.Ct. at 2771-78. If, however, the Court addresses those issues, the outcome is the same: Plaintiff must arbitrate.

As the United States Supreme Court has held, the parties have clearly and unmistakably provided that the arbitrator should decide the gateway issues of whether an enforceable agreement exists and whether that agreement applies to the claims raised by Plaintiff. Based on the Supreme Court's decision in *Rent-A-Center, West, Inc.*, and the above authority, any challenges to the enforceability or validity of the Arbitration Provision must be submitted to arbitration. On this basis alone, the Court should compel arbitration of Plaintiff's claims.

"The determination of the propriety of a motion to compel arbitration pursuant to Section 4 of the Federal Arbitration Act is a two-step inquiry." *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004). "[T]he first task of a court asked to compel arbitration of a dispute is to

determine whether the parties agreed to arbitrate that dispute. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985). The Court must "apply[] the federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the FAA. This inquiry must occur against the background of a liberal federal policy favoring arbitration agreements. *Klay*, 389 F.3d at 1200 (internal citations omitted); *see also Moses H. Cone*, 460 U.S. at 24. Under this policy, the court's role is to rigorously enforce agreements to arbitrate. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).

Here, the broad language of the Arbitration Provision covers the Plaintiff's claims and requires arbitration.  The Arbitration Provision covers claims arising out of or in any way related to the Loan Documents.  Specifically, the Arbitration Provision applies to:

> [a]ny controversy, claim, suit, demand, counterclaim, cross claim, or third party complaint arising out of, or relating to this Order or the parties' relationship (whether statutory or otherwise and irrespective of whether the Financing Approvals were obtained)…

The Plaintiff's claims in this instance derive from Westlake's attempts to enforce the provisions of the RISC.  Thus, the claims arise out of or relate to the Loan Documents.

Under Section 3 of FAA, in any lawsuit "referable to arbitration, " the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.  Thus, this Honorable Court should compel Plaintiff to pursue her claims in arbitration and stay this action pending that arbitration. *See e.g., Suarez –Valdez v. Shearson Lehman/Am. Express*, Inc., 858 F. 2d 648, 649 (11th Cir. 1988) (holding that, on defendant's motion to stay arbitration, court correctly stayed action to valid arbitration agreement, and should have stayed all discovery in that action as well); *Losapio*, 2011 WL 1497652, at *8 (ordering Plaintiff to submit her individual claims to binding arbitration and

staying action pending arbitration).  The result is the same under Florida law.  *See* Fla. Stat §682.03 (6), (7) ("If a party makes a motion to the court to order arbitration, the court on just terms shall stay any judicial proceeding that involves a claim alleged to be subject to the arbitration until the court renders a final decision under this section…. If the court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration.").

### III.   Westlake, as Assignee of the Loan Documents, Can Enforce the Arbitration Provision

Westlake is the assignee of the Loan Documents.  Although it is not a signatory to the Loan Documents, Westlake can enforce the Arbitration Provision as an assignee since it "stands in the shoes of and has the rights as did the assignor."  *Julian v. Rollins, Inc.,* 2017 U.S. Dist. LEXIS 16936, *8 (M.D., Fla. Feb. 7, 2017); *see, also, Nolan v. MIA Real Holdings, LLC,* 185 So. 3d 1275, 1276 (Fla. 4th DCA, 2016) (Assignee stands in the shoes of the assignor and may enforce the contract against the original obligor in his own name).

Moreover, the doctrine of equitable estoppel would amount to the same result.  *See, Armas v. Prudential Sec., Inc.,* 842 So. 2d 210, 212 (Fla. 3rd DCA, 2003)(holding an arbitration clause containing the phrase "arising out of or relating to" was broad enough to include non-signatories); *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.,* 845 F. 3d 1351, 2017 WL 192690, at *4 (11th Cir., 2017)( discussing Florida law on equitable estoppel); and *Betancourt v. Green Tree Servicing, LLC*, No. 8:13-cv-2759-T-30AEP, 2013 U.S. Dist. LEXIS 176728, 2013 WL 6644560, at *2-4 (M.D., Fla., Dec. 17, 2013).

### IV.   The Instant Motion is Timely

This case is still in its infancy.  Very little discovery has taken place.  Indeed, only the Plaintiff has propounded discovery requests, the responses to which have not yet expired. Defendant has not engaged in significant litigation which would demonstrate a willingness to

submit to judicial resolution in this matter.   Defendant also reserved the right to challenge Plaintiff's jury trial demand in the Case Management Report. [ECF No. 13 footnote 1].  Lastly, Plaintiff will not be prejudiced by Defendant's Motion because the Defendant has not taken steps to invoke the judicial machinery of this Honorable Court.

There is a "heavy burden" to prove waiver of arbitration due to the strong federal policy favoring it. *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1200 n.17 (11th Cir. 2011).  The Eleventh Circuit applies a two-part test to determine whether a party has waived its right to arbitration. "First, we decide if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right." *Garcia v. Wachovia Corp.*, 699 F.3d 1273, 1277 (11th Cir. 2011). This occurs when the party "substantially invokes the litigation machinery prior to demanding arbitration." *Id.* "[S]econd, we look to see whether, by doing so, that party has in some way prejudiced the other party." *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1316 (11th Cir. 2002)(quotation omitted).  To determine prejudice, "we may consider the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process." *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990). In a procedurally similar case, a circuit court found that "neither filing an answer nor waiting four months to seek arbitration was sufficient to constitute a waiver" *Coca—Cola Bottling Co. of New York, Inc. v. Soft Drink and Brewery Workers Union Local 812*, 242 F.3d 52, 57-58 (2nd Cir. 2001).

Cases where the Eleventh Circuit has found a waiver, are far different from the procedural posture in this case.  As examples, the Eleventh Circuit has found waiver in cases with long delays *and* extensive use of discovery or motion practice prior to the defendant's assertion of its arbitration right. *See e.g., Robinson v. Alston*, 596 F. App'x 871, 873 (11th Cir. 2015) (finding

wavier where the defendant waited eight months before demanding arbitration, during which time there had been "numerous filings," and the defendant ignored both the opposing party and the Court's invitations to initiate arbitration proceedings); *Garcia*, 699 F.3d at 1277-78 (finding waiver where party failed to move to compel even though the court invited it to do so, and the party conducted discovery for more than a year, including more than 15 depositions and production of nearly 900,000 pages of documents); *S & H Contractors, Inc.*, 906 F.2d at 1514 (finding waiver where party had filed two motions and engaged in five depositions before demanding arbitration); *Stone*, 898 F.2d at 1543-44 (finding waiver where the defendant waited more than a year and eight months before demanding arbitration during which time the defendant deposed the plaintiff twice and had propounded on the plaintiff multiple sets of interrogatories and requests for production, and scheduled other depositions). None of these cases are applicable here.  No depositions have been taken. Defendant has not served any written discovery, nor has it engaged in significant motion practice.  other than requesting extensions of time.

Plaintiff may argue that the amount of time that has passed has established waiver. However, the Eleventh Circuit is clear that the "length of time in itself does not establish waiver." *See Grigsby & Assocs., Inc. v. M. Sec. Inv.*, 635 F. App'x 728, 733 (11th Cir. 2015). Instead, the delay must be "coupled with other substantial conduct inconsistent with an intent to arbitrate." *Id.* (citing *S & H Contractors, Inc.*, 906 F.2d at 1514).  In a recent and procedurally similar action, this Honorable Court found that a defendant had waited six months after Plaintiffs initiated the action before demanding arbitration and still did not waive its right to arbitrate. *Bey v. XPO Logistics, Inc*., 2017 U.S. Dist. LEXIS 144797, *8 (M.D., Fla., Sept. 7, 2017).

Here, the record is devoid of any facts which would indicate the Defendant has invoked the litigation machinery of this Court which would demonstrate that it intended to submit itself to

**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400

this Court's jurisdiction.  Other than a motion for an extension of time to respond to the complaint, Defendant has not sought affirmative relief from this Court.

## CONCLUSION

For the foregoing reasons, Westlake respectfully requests that the Court enter an Order Compelling Plaintiff to submit her claims to arbitration and stay this action pending arbitration.

## LOCAL RULE 3.01(g) CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 3.01(g), counsel for Westlake certifies that he conferred with counsel for Plaintiff on August 22nd, 2018 concerning this Motion, and that counsel for Plaintiff represented that he does not oppose the relief sought herein.

/s/ *James R. Liebler, II*_____
J. RANDOLPH LIEBLER
Florida Bar No. 507954
JAMES R. LIEBLER II
Florida Bar No. 115348
IRA SCOT SILVERSTEIN
Florida Bar No. 0009636
**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor
44 West Flagler Street
Miami, FL 33130
Telephone:  (305) 379-0400
Fax:  (305) 379-9626
service@lgplaw.com

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 23rd day of August, 2018, I electronically caused the foregoing document to be filed with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record in the manner specified via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ James R. Liebler, II*
JAMES R. LIEBLER, II

John C. Distasio, Esq.
Morgan & Morgan, Tampa, P.A.
201 N. Franklin St., Suite 700
Tampa, FL  33602
Email: JDistasio@forthepeople.com
         JessicaK@forthepeople.com
*Counsel for Plaintiff*